UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


DWAINE ELMER POOLE,

                    Petitioner,

v.                                     Case No. 3:15-cv-1157-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                    Respondents.

_____

## ORDER

### I. Status

Petitioner Dwaine Elmer Poole initiated this action by filing
a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1)
under 28 U.S.C. § 2254 and Memorandum of Law in Support of Petition
(Memorandum; Doc. 2) on September 29, 2015. In the Petition, Poole
challenges his violation of probation relating to a 2012 state
court (Columbia County, Florida) judgment of conviction for
uttering a forgery. Respondents have submitted a memorandum in
opposition to the Petition. See Respondents' Answer (Response; Doc.
17) with exhibits (Resp. Ex.). On October 18, 2016, the Court
entered an Order to Show Cause and Notice to Petitioner (Doc. 6),

admonishing Poole regarding his obligations and giving Poole a time frame in which to submit a reply. Poole submitted a brief in reply on June 20, 2017. <u>See</u> Reply to Respondents' Answer (Reply; Doc. 20). This case is ripe for review.

## II. Procedural History

On August 20, 2008, the State of Florida charged Poole with six counts of uttering a forgery. <u>See</u> Resp. Ex. A-1 at 1-3, Information. Poole entered a negotiated plea agreement with the State on July 13, 2009. <u>See</u> Resp. Ex. B at 164-68. Pursuant to the terms of the negotiated plea agreement, Poole pled guilty to all six counts. That same day, the court sentenced Poole to a term of imprisonment of thirty-six months for count one, and three years of probation for counts two through six, to run concurrently with each other and consecutively to count one. <u>See</u> <u>id.</u> at 174-88, Judgment. On May 2, 2011, Ronald Raymond (Poole's probation officer) filed an Affidavit of Violation of Probation (VOP), asserting that Poole had violated several conditions of the Order of Probation. <u>See</u> <u>id.</u> at 193-97. Raymond amended the VOP Affidavit on May 16, 2011, to include allegations of new charges in Polk County, Florida. <u>See</u> Resp. Ex. J at 66-67.

The case proceeded to a hearing, at the conclusion of which, on June 13, 2012, the court revoked Poole's probation. <u>See</u> Resp. Ex. D, Transcript of the VOP hearing (Tr.). The court sentenced Poole to terms of imprisonment of five years on counts two and

three, to run concurrently with each other, and terms of imprisonment of five years on counts four, five, and six, to run concurrently with each other, and consecutively to the sentences imposed for counts two and three. <u>See</u> Resp. Ex. C at 229-34, Judgment; Tr. at 56-57.

On direct appeal, Poole, with the benefit of counsel, filed an initial brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). <u>See</u> Resp. Ex. E. Poole filed a pro se brief, arguing that the trial court erred when it revoked his probation based on hearsay testimony. <u>See</u> Resp. Ex. F. The State did not file an answer brief. <u>See</u> http://onlinedocketsdca.flcourts.org, Case No. 1D12-3086. On January 7, 2013, the appellate court affirmed Poole's conviction and sentence per curiam without issuing a written opinion, <u>see</u> Resp. Ex. G, and the mandate issued on February 4, 2013, <u>see</u> Resp. Ex. H.

Poole filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion) on July 4, 2013. <u>See</u> Resp. Ex. I at 1-38. In his request for post-conviction relief, Poole asserted that counsel (Thomas Nemeck) was ineffective because he failed to: obtain medical records that would refute Florida Highway Patrol Trooper Walt Smith's account and the State's version of the events (ground 1A); object to the State's discovery violation and seek a <u>Richardson</u>[1]

---

[1] <u>Richardson v. State</u>, 246 So.2d 771, 775 (Fla. 1971).

3

hearing (ground 1B); adequately investigate and prepare for the VOP hearing (ground 1C); object to the court's decision to conduct the VOP hearing before a jury trial on the new law violations (ground 1D); investigate and call medical personnel as witnesses to refute Trooper Smith's testimony (ground 1E); obtain a copy of the other driver's deposition and provide a copy to Poole for his review (ground 1F); object to the State's use of facts related to the Polk County charges (ground 1G); and investigate, take photographs, and call the tow truck driver and owner of the wrecking yard as witnesses to refute Trooper Smith's testimony (ground 1H). Additionally, he maintained that the State committed a discovery violation when it withheld the names of two eyewitnesses who had identified Poole as the driver of the vehicle involved in the traffic collision (ground two). He also stated that counsel's cumulative errors deprived him of a fair and impartial VOP hearing (ground three). The court denied the Rule 3.850 motion on October 31, 2014, see Resp. Ex. J at 58-186, and later denied his motion for rehearing, see id. at 190-205, 206-07. On March 10, 2015, the appellate court affirmed the trial court's denial of post-conviction relief per curiam, see Resp. Ex. M, and later denied Poole's motion for rehearing, see Resp. Exs. N; O. The mandate issued on May 8, 2015. See Resp. Ex. P.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Poole's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S.Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related

> state-court decision that does provide a
> relevant rationale. It should then presume
> that the unexplained decision adopted the same
> reasoning.

<u>Wilson v. Sellers</u>, 138 S.Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

The United States Supreme Court reiterated the standard of review when there is not a reasoned state court adjudication on the merits. <u>See</u> <u>Sexton v. Beaudreaux</u>, 138 S.Ct. 2555, 2558 (2018) (per curiam).

> When, as here, there is no reasoned
> state-court decision on the merits, the
> federal court "must determine what arguments
> or theories ... could have supported the state
> court's decision; and then it must ask whether
> it is possible fairminded jurists could
> disagree that those arguments or theories are
> inconsistent with the holding in a prior
> decision of this Court." <u>Harrington v.
> Richter,</u> 562 U.S. 86, 102, 131 S.Ct. 770, 178
> L.Ed.2d 624 (2011). If such disagreement is
> possible, then the petitioner's claim must be
> denied. <u>Ibid.</u> We have often emphasized that
> "this standard is difficult to meet" "because
> it was meant to be." <u>Ibid.</u>; <u>e.g.</u>, <u>Burt v.
> Titlow</u>, 571 U.S. 12, 20, 134 S.Ct. 10, 187
> L.Ed.2d 348 (2013).

<u>Id.</u>

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's

7

decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence."

> See Burt v. Titlow, 571 U.S. ---, ---, 134 S.
> Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord
> Brumfield v. Cain, 576 U.S. ---, ---, 135 S.
> Ct. 2269, 2282, 192 L.Ed.2d 356 (2015).
> Whatever that "precise relationship" may be,
> "'a state-court factual determination is not
> unreasonable merely because the federal habeas
> court would have reached a different
> conclusion in the first instance.'"[2] Titlow,
> 571 U.S. at ---, 134 S. Ct. at 15 (quoting
> Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct.
> 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S.Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to

---

[2] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S.Ct. 1103 (2017).

be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that Poole's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must

> "fairly present" his claim in each appropriate
> state court (including a state supreme court
> with powers of discretionary review), thereby
> alerting that court to the federal nature of
> the claim. Duncan, supra, at 365-366, 115
> S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S.
> 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1
> (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the
> constitutionality of a state prisoner's
> conviction and sentence are guided by rules
> designed to ensure that state-court judgments
> are accorded the finality and respect
> necessary to preserve the integrity of legal
> proceedings within our system of federalism.
> These rules include the doctrine of procedural
> default, under which a federal court will not
> review the merits of claims, including
> constitutional claims, that a state court
> declined to hear because the prisoner failed
> to abide by a state procedural rule. See,
> e.g., Coleman,[3] supra, at 747-748, 111 S.Ct.
> 2546; Sykes,[4] supra, at 84-85, 97 S.Ct. 2497.
> A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes
> federal review of the claims if, among other
> requisites, the state procedural rule is a
> nonfederal ground adequate to support the
> judgment and the rule is firmly established
> and consistently followed. See, e.g., Walker
> v. Martin, 562 U.S. --, --, 131 S.Ct. 1120,
> 1127-1128, 179 L.Ed.2d 62 (2011); Beard v.

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).

[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

11

> *Kindler*, 558 U.S. --, --, 130 S.Ct. 612,
> 617–618, 175 L.Ed.2d 417 (2009). The doctrine
> barring procedurally defaulted claims from
> being heard is not without exceptions. A
> prisoner may obtain federal review of a
> defaulted claim by showing cause for the
> default and prejudice from a violation of
> federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
> 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010); <u>In Re Davis</u>, 565 F.3d 810, 821 (11th Cir. 2009). In order for a petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477
> U.S. at 488, 106 S.Ct. 2639).[5] Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." <u>Id</u>.
> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106
> S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

In _Martinez_, the Supreme Court modified the general rule in _Coleman_[6] to expand the "cause" that may excuse a procedural default. 132 S.Ct. at 1315.

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of _Strickland v. Washington_, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim

---

[6] "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" _Maples v. Thomas_, 565 U.S. 266, 280 (2012) (citing _Coleman_, 501 U.S. at 753). The Court reasoned that, under principles of agency law, the attorney is the prisoner's agent, and therefore, the principal bears the risk of negligent conduct on the part of his agent. _Coleman_, 501 U.S. at 753-54. In _Coleman_, the alleged ineffectiveness of counsel was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court. _Id._ at 755. However, the _Martinez_ Court addressed ineffective assistance of counsel at an initial-review collateral proceeding.

> is a substantial one, which is to say that the
> prisoner must demonstrate that the claim has
> some merit. <u>Cf</u>. <u>Miller-El v. Cockrell</u>, 537
> U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931
> (2003) (describing standards for certificates
> of appealability to issue).

<u>Id</u>. at 1318-19.

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue
> for him to receive consideration on the merits
> of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional
> violation has probably resulted in the
> conviction of one who is actually innocent, a
> federal habeas court may grant the writ even
> in the absence of a showing of cause for the
> procedural default." <u>Carrier</u>, 477 U.S. at 496,
> 106 S.Ct. at 2649. "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just
> legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not

presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had

> some conceivable effect on the outcome of the
> proceeding." _Id._, at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." _Id._, at 687, 104
> S.Ct. 2052.

_Richter_, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the _Strickland_ test before the other." _Ward_, 592 F.3d at 1163. Since both prongs of the two-part _Strickland_ test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." _Id._ (citing _Holladay v. Haley_, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in _Strickland_: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." _Strickland_, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's
> representation is a most deferential one."
> _Richter_, - U.S. at -, 131 S.Ct. at 788. But
> "[e]stablishing that a state court's
> application of _Strickland_ was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by _Strickland_ and § 2254(d)
> are both highly deferential, and when the two
> apply in tandem, review is doubly so." _Id._
> (citations and quotation marks omitted). "The
> question is not whether a federal court
> believes the state court's determination under
> the _Strickland_ standard was incorrect but
> whether that determination was unreasonable -
> a substantially higher threshold." _Knowles v._

> _Mirzayance_, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied _Strickland_'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. _Richter_, – U.S. at –, 131 S.Ct. at 788.

_Hittson v. GDCP Warden_, 759 F.3d 1210, 1248 (11th Cir. 2014); _Knowles v. Mirzayance_, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by _Strickland_, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." _Rutherford v. Crosby_, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting _Strickland_'s high bar is never an easy task." _Padilla v. Kentucky_, 559 U.S. 356, 371 (2010).

### VI. Findings of Fact and Conclusions of Law

#### A. Ground One

As ground one, Poole asserts that the trial court erred when it revoked his probation based on hearsay testimony. _See_ Petition at 6-8; Memorandum at 1-3. Respondents argue that Poole did not present this claim as a federal due process violation on direct appeal, and thus Poole's federal due process claim has not been exhausted and therefore is procedurally barred. _See_ Response at 18. On this record, the Court agrees that the federal due process claim has not been exhausted and is therefore procedurally barred since Poole failed to raise the claim in a procedurally correct manner.

17

Poole has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that Poole's federal due process claim is not procedurally barred, Poole is not entitled to relief. As previously stated, Poole argued this issue in a pro se brief on direct appeal,[7] see Resp. Ex. F; the State did not file an answer brief, see http://onlinedocketsdca.flcourts.org, Case No. 1D12-3086; and the appellate court affirmed Poole's conviction and sentence without issuing a written opinion, see Resp. Ex. G.

To the extent the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Poole is not entitled to relief on the basis of this claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, and that

---

[7] Appointed counsel filed an _Anders_ brief. See Resp. Ex. E.

the claim presents a sufficiently exhausted issue of federal constitutional dimension,[8] Poole's claim, nevertheless, is without merit. At the VOP hearing, Trooper Smith testified that he arrived at the crash scene to investigate the accident as an ambulance left to transport Poole to the hospital. <u>See</u> Tr. at 22. Smith stated that he spoke to the driver of the semi-truck involved in the crash as well as fire rescue personnel. <u>See</u> <u>id.</u> The following colloquy transpired.

> Q Did the driver talk to you about the incident that occurred?
>
> A Yes, ma'am.
>
> Q What did the driver say?
>
> A He told me he was northbound on 47 and a white truck had pulled out in front of him, he collided with the truck. After the collision he went over to check on the driver and he did state that he was the sole occupant of the vehicle. And when I asked who it was, he said, I don't know his name, it's the guy that they have on [sic] the ambulance.
>
> Q Okay. Now when you talked to him and you were looking at the scene of the accident, was this report, as to the events that happened, consistent with the evidence that you saw when you arrived at that accident scene?
>
> A Yes, ma'am.
>
> Q Did anybody else say anything about who the driver was of the vehicle?

---

[8] <u>See</u> Response at 18.

A There were two witnesses that had been
at the B & B Store, and I would have to look
at the record to see exactly what their
statements were.

. . . .

Q It's all right. Did you find any other
information at the scene of the crash to help
you identify the driver?

A We were not able to find it then.
Later, while going through the truck even
further we did find some prison release
paperwork.

Q And who did that prison release
paperwork belong to?

A Dwaine Poole.

Tr. at 23, 24. On cross-examination, Smith stated:

There was a lot of debris, just trash and
tools in the passenger seat of that truck that
would indicate that there was no passenger in
that vehicle. It was solely the driver.

Id. at 33. There was more than hearsay testimony to support the
finding that Poole had violated his probation. Therefore, Poole is
not entitled to federal habeas relief as to ground one.

## B. Ground 2(a)

As ground 2(a), Poole asserts that counsel was ineffective
because he failed to obtain medical records to refute Trooper
Smith's testimony and the State's version of the facts. See
Petition at 9-10; Memorandum at 4-5. He states that his medical
records would have shown that emergency medical personnel found him
"on the ground outside the truck when they arrived." Petition at 9.

20

He raised the claim in his Rule 3.850 motion in state court. <u>See</u> Resp. Ex. I at 5-6. The court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

> On August 20, 2008, the State Attorney of the Third Judicial Circuit filed an information charging the Defendant with six counts of Uttering a Forgery. On July 13, 2009, the Defendant entered into a negotiated plea agreement with the State. Pursuant to the terms of the negotiated plea agreement, the Defendant pled guilty as charged to all six counts. This Court accepted the Defendant's guilty plea, and imposed the negotiated sentence of thirty-six months in the Department of Corrections (DOC), with credit for time served, for Count I. For Counts II through VI, this Court ordered the Defendant [to] serve three years of probation in each count, to run concurrent with each other and consecutive to the prison sentence as stipulated in the plea agreement.
>
> On May 2, 2011, the Defendant's probation officer filed an Affidavit of Violation of Probation (VOP), alleging the Defendant had violated several conditions of the Order of Probation. The affidavit was later amended to include additional violations. <u>See</u> attached Amended Affidavit Violation of Probation.[9] Among the alleged violations were allegations that the Defendant had committed several new law violations and caused a multi-vehicle crash on or about April 24, 2011.
>
> On June 13, 2012, the Defendant was before this Court for the VOP hearing on the alleged violations. Prior to the presentation of evidence, the Court granted the State's motion to dismiss the allegations on [sic] the last four paragraphs of the amended affidavit, which involved allegations of new charges in

---

[9] <u>See</u> Resp. Ex. J at 66-67.

Polk County. <u>See</u> attached Transcript at 9, lines 19-21.[10]

At the hearing, the State called as witnesses the Defendant's probation officer and the officer who investigated the crash. The State also introduced the Defendant's medical records of treatment received after the crash, the Defendant's driving record, and a diagram of the crash. <u>See</u> attached Medical Reports, Driving Record, and Diagram of Crash.[11] After hearing the evidence presented and argument of counsel, this Court found the Defendant not guilty of some of the violations and guilty of others. <u>See</u> Transcript at 49-51. Upon finding willful and substantial violations of probation, the Court revoked the Defendant's probation. Taking into consideration matters in mitigation, this Court sentenced the Defendant to a total of ten years incarceration – five years on Counts II and III, to run concurrent with each other and five years on Counts IV, V, and VI, to run concurrent with each other but consecutive to the sentences imposed on Counts II and III. <u>See</u> attached Order of Revocation of Probation, Judgment, and Sentence.[12] The Defendant appealed to the First District Court of Appeal (DCA), which issued a mandate per curiam affirming the revocation and sentences on February 4, 2013. Thereafter, the Defendant timely filed a rule 3.800(c) motion for modification or reduction of sentence which this Court denied on the merits. The instant motion followed.

. . . .

In Ground One, Issue A, the Defendant argues that Counsel was ineffective for failing to obtain the medical records or EMT reports necessary to refute Trooper Smith's

---

[10] <u>See</u> Tr. at 9.

[11] <u>See</u> Resp. Ex. J at 126-70; Tr. at 38, 42, 43-44.

[12] <u>See</u> Resp. Ex. J at 171.

testimony and the State's version of the facts. The Defendant asserts that these records would have proved that he was found outside the truck, and that he had suffered trauma. However, Ground One, Issue A, is refuted by the record.

The transcript of the VOP hearing demonstrates that Counsel had reviewed the medical report, because Counsel cross-examined Trooper Smith on the issue of the Defendant's trauma noted within the medical report. See attached Transcript at 35-37. Counsel also argued in his closing that the medical report demonstrated that the Defendant suffered trauma. See attached Transcript at 45-46. Therefore, the claim that Counsel failed to obtain and review the medical reports is partially refuted by the record. It is unclear what else Counsel could have done with the medical reports other than cross-examine the State's witnesses on the content of their reports, which he did. See attached Transcript.[13] Accordingly, Ground One, Issue A, fails to demonstrate the deficient performance prong of the Strickland standard, and will be denied. Hurst v. State, 18 So.3d 975 (Fla. 2009). ("[W]hen a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he had made a showing as to the other prong." Preston v. State, 970 So.2d 789, 803 (Fla. 2007) (quoting Whitfield v. State, 923 So.2d 375, 384 (Fla. 2005)).

Resp. Ex. J at 57-59 (selected emphasis and headings deleted).

Poole sought rehearing as to this claim, see id. at 191-95, based on the discovery of two allegedly exculpatory medical reports, see id. at 199-202. The court denied his motion for rehearing. See id. at 206-07. On Poole's appeal, the appellate court affirmed the

---

[13] See Tr. at 35-37.

trial court's denial of post-conviction relief per curiam, <u>see</u> Resp. Ex. M, and later denied Poole's motion for rehearing, <u>see</u> Resp. Exs. N; O.

To the extent that the state appellate court affirmed the trial court's denial on the merits,[14] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Poole is not entitled to relief on the basis of the claim.

Moreover, in the event the state appellate court's adjudication of the claim is not entitled to deference, Poole's claim, nevertheless, is without merit. In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. <u>See</u> <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the

---

[14] In looking through the appellate court's affirmance to the trial court's "relevant rationale," this Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S.Ct. at 1192.

identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, Poole must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. <u>Ward</u>, 592 F.3d at 1164 (quotations and citation omitted); <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On this record, Poole has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Poole has not shown any

resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had presented the two medical reports at the VOP hearing.[15] His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Poole is not entitled to federal habeas relief on ground 2(a).

## C. Grounds 2 and 2(b)

As ground two, Poole asserts that the State committed a discovery violation when it withheld the names of two witnesses to the accident. See Petition at 33-34; Memorandum at 19-22. Additionally, as ground 2(b), he maintains that counsel was ineffective because he failed to object to the State's discovery violation and seek a Richardson[16] hearing. See Petition at 12-13; Memorandum at 5-6. He raised the claims in his Rule 3.850 motion in state court. See Resp. Ex. I at 7-10, 29-31. The court ultimately denied the post-conviction motion as to the claims, stating in pertinent part:

> Because these two grounds are based on the same factual matter, they will be considered together. In Ground One, Issue B, the Defendant argues that Counsel was ineffective for failing to move for a

---

[15] See Resp. Ex. J at 200, 205.

[16] A Richardson hearing is held to determine whether the State committed a discovery violation in contravention of the Florida Rules of Criminal Procedure and, if so, whether the non-compliance resulted in prejudice to the defendant's ability to prepare for trial. See Richardson, 246 So.2d at 775.

Richardson hearing upon the State's discovery violation. In Ground Two, the Defendant argues that the State committed a discovery violation. The Defendant asserts that Trooper Smith's testimony included references to two witnesses that he interviewed at the scene of the crash, and that those witnesses told Trooper Smith the Defendant was the driver of the car. The Defendant argues that, because the State "failed to disclose two (2) witness's (sic) identity who had spoken to Trooper Smith," a Richardson hearing was warranted. Motion at 7. However, Ground One, Issue B, and Ground Two fail as the record refutes the Defendant's claim of a discovery violation.

During the pendency of the violation of probation proceedings, the Defendant was charged by information in Columbia County Case No. 11-403-CF with virtually the same offenses alleged in the amended affidavit of violation of probation. See attached information.[17] This Court has taken judicial notice of Columbia County Case No. 11-403-CF, and the court file reflects that on June 19, 2011, the State provided to Defendant's counsel the "State's Discovery Exhibit." See attached.[18] One of the numerous documents disclosed to the Defendant in discovery and contained in the court file was the Florida Traffic Crash Report from Trooper Smith. See attached.[19] On the second page of the report, Trooper Smith listed the name, address and telephone number of the two witnesses. See attached.[20] Accordingly, Defendant's counsel was made aware by the State of the existence and identity of the two witnesses and there was no discovery violation requiring a Richardson hearing.

---

[17] See Resp. Ex. J at 178-79, Information.

[18] See Resp. Ex. J at 180-83.

[19] See Resp. Ex. J at 184-86, Florida Traffic Crash Report.

[20] See Resp. Ex. J at 185.

Therefore, Counsel could not have rendered deficient performance by failing to request a <u>Richardson</u> hearing, as one was not warranted. It follows then, that Counsel was not ineffective, as Counsel cannot be ineffective for failing to raise a meritless claim. <u>Dailey v. State</u>, 965 So.2d 38 (Fla. 2007). Further, the Defendant's primary objection to this testimony is that "in the absence of the two (2) witnesses live testimony at the VOP hearing and Trooper Smith's summary of the statements of the two (2) witnesses to him were clearly hearsay." Motion at 8. However, it is well-settled that hearsay evidence is admissible in a probation revocation hearing, as long as it does not form the sole basis for the revocation. <u>Russell v. State</u>, 982 So.2d 642, 646 (Fla. 2008). Here, the crash witnesses' testimony certainly did not form the sole basis of the revocation, as the Defendant was found to have violated Condition 5 of the Order of Probation in several instances. <u>See</u> attached Order of Revocation of Probation.[21] Therefore, the hearsay evidence of the crash witnesses' testimony was admissible. Furthermore, Counsel did cross-examine Trooper Smith on this very issue. <u>See</u> Transcript at 31-32. Counsel asked Trooper Smith whether the information he had acquired "would have come from the witnesses and the truck driver," and whether he was relying "on the secondhand witnesses today in your testimony." Transcript at 31. Therefore, Counsel did represent the interests of the Defendant in this manner. Accordingly, Ground One, Issue B, fails to demonstrate the deficient performance prong of the <u>Strickland</u> standard, and will be denied. <u>Hurst</u>, 18 So.3d 975.

Resp. Ex. J at 59-60 (selected emphasis deleted). On Poole's

appeal, the appellate court affirmed the trial court's denial of

---

[21] <u>See</u> Resp. Ex. J at 171.

post-conviction relief per curiam, <u>see</u> Resp. Ex. M, and later denied Poole's motion for rehearing, <u>see</u> Resp. Exs. N; O.

To the extent that the state appellate court affirmed the trial court's denial on the merits,[22] the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Poole is not entitled to relief on the basis of the claims.

Moreover, even assuming the state appellate court's adjudication of the claims is not entitled to deference, Poole's claims are still without merit. Notably, the State provided the defense with the names and addresses of the two witnesses. <u>See</u> Resp. Ex. J at 180-83 (State's Discovery Exhibit), 184-86 (Florida Traffic Crash Report). Poole has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Poole has not shown any

---

[22] This Court presumes that the appellate court "adopted the same reasoning" as the post-conviction court. <u>Wilson</u>, 138 S.Ct. at 1192.

resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had requested a <u>Richardson</u> hearing. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Poole is not entitled to federal habeas relief on grounds two and 2(b).

### D. Ground 2(c)

As ground 2(c), Poole asserts that counsel was ineffective because he failed to investigate and properly prepare for the VOP hearing. <u>See</u> Petition at 15-16; Memorandum at 7-9. He raised the claim in his Rule 3.850 motion in state court. <u>See</u> Resp. Ex. I at 10-13. The court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

> In Ground One, Issue C, the Defendant argues that Counsel was ineffective for failing to conduct [an] adequate investigation before the VOP hearing. The Defendant asserts that, because his former attorney left the Office of the Public Defender before the VOP hearing, latter Counsel only talked to him for a short time before the hearing. The Defendant asserts that Counsel failed to obtain an accident reconstruction expert, or explore the fact that no DNA or blood was found in the vehicle identifying him as the driver. The Defendant claims these actions resulted in Trooper Smith's version of the story prevailing at the VOP hearing, which the Defendant argues was not corroborated. However, Ground One, Issue C, fails.

> The Defendant fails to demonstrate how he was prejudiced by Counsel talking to him only for a short time before the hearing, and the record reflects that Counsel was prepared for

the VOP hearing. First, the transcript demonstrates that Counsel met with the Defendant, had reviewed the medical reports, had reviewed the depositions of witnesses, had prepared a motion to dismiss some of the violations, moved for a continuance at the Defendant's request, and cross-examined the State's witnesses. See Transcript. Second, at the VOP hearing, the Defendant complained of this very issue. In response, Counsel told this Court that, "I acquired the depositions and I listened to all the depositions in this case and am prepared for this hearing today, Your Honor." Transcript at 15. Therefore, the claim that Counsel was not prepared for the hearing is refuted by the record.

The claim that Counsel failed to obtain an accident reconstruction expert or explore the fact that there was no DNA or blood found in the car also fails. This claim fails to demonstrate prejudice, as it does not convince this Court that the outcome of the VOP hearing would have been different if Counsel had called an accident reconstruction expert or explored DNA or blood in the car. According to the reports, the Defendant was found a close distance from the crash. See attached.[23] According to Trooper Smith's testimony, no other persons were in the car or near the car, and there were no other suspects. Transcript at 20-38. Further, Trooper Smith's later search of the truck produced the Defendant's Prison Release paperwork that documented the Defendant's entrance into and release from the Department of Corrections, which led him to the conclusion that the Defendant had been driving the truck. Transcript at 24. Therefore, this claim fails to demonstrate how an accident reconstruction expert or DNA or blood tests could have contributed to the defense, as there was overwhelming evidence that the Defendant was the driver of the car that caused the crash. See Transcript. For these reasons, Ground One, Issue C, fails to

---

[23] See Resp. Ex. J at 136.

> demonstrate that the outcome of the VOP
> hearing would have been different if Counsel
> had conducted further investigation or met
> with the Defendant for a longer amount of time
> before the hearing. Accordingly, this Ground
> fails to meet the prejudice prong of the
> <u>Strickland</u> standard, and it will be denied.
> <u>Hurst</u>, 18 So.3d 975.

Resp. Ex. J at 60-61 (selected emphasis deleted). On Poole's appeal, the appellate court affirmed the trial court's denial of post-conviction relief per curiam, <u>see</u> Resp. Ex. M, and later denied Poole's motion for rehearing, <u>see</u> Resp. Exs. N; O.

Insofar as the state appellate court affirmed the trial court's denial on the merits,[24] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Poole is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Poole's claim is still without merit. Poole has failed to carry his burden

---

[24] The appellate court presumably adopted the same reasoning as the post-conviction court. <u>See</u> <u>Wilson</u>, 138 S.Ct. at 1192.

of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Poole has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had investigated and consulted with him in the manner he suggests. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Poole is not entitled to federal habeas relief on ground 2(c).

### E. Ground 2(d)

As ground 2(d), Poole asserts that counsel was ineffective because he failed to object to the trial court's denial of his request for a continuance of the VOP hearing. See Petition at 18-20; Memorandum at 9-11. Respondents argue that the claim is procedurally barred. See Response at 21-22. Assuming that Poole intends to raise the same ineffectiveness claim here that he raised in his Rule 3.850 motion in state court, see Resp. Ex. I at 13-15, his ineffectiveness claim is sufficiently exhausted. The state court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

> In Ground One, Issue D, the Defendant argues that Counsel was ineffective for failing to object to this Court conducting the VOP hearing before conducting a jury trial on the new law violations case. However, Ground One, Issue D, fails.

The record reflects that at the beginning
of the VOP hearing, Counsel advised this Court
that "First, my client is requesting that any
of the new law violations actually be tried
prior to the VOP h[e]aring." Transcript at 4.
This Court denied the motion. Transcript at 9.
Therefore, contrary to the Defendant's
allegation that the continuance "was not
preserved for appellate review," this motion
and ruling upon the motion was on the record.
Because it was Counsel's own motion, there was
no need to object; the motion itself preserved
the matter for appellate review. Therefore,
Counsel could not have rendered deficient
performance in this regard, as Counsel cannot
be ineffective for failing to raise a
meritless claim. Dailey, 965 So.2d 38.
Similarly, the Defendant could not have been
prejudiced, as the ruling was on the record.
Therefore, Ground One, Issue D[,] fails to
meet either prong of the Strickland standard.
Any further complaint of the outcome of this
motion would actually be complaining of a
trial court error, which cannot be raised in
the instant motion. Fla. R. Crim. P. 3.850;
Swanson v. State, 984 So.2d 629 (Fla. 1st DCA
2008). For these reasons, Ground One, Issue D,
must be denied.

Resp. Ex. J at 61 (selected emphasis deleted). On Poole's appeal,

the appellate court affirmed the trial court's denial of post-

conviction relief per curiam, and later denied Poole's motion for

rehearing.

To the extent that the state appellate court affirmed the

trial court's denial on the merits,[25] the Court will address the

claim in accordance with the deferential standard for federal court

review of state court adjudications. After a review of the record

---

[25] See Wilson, 138 S.Ct. at 1192.

and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Poole is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Poole's claim, nevertheless, is without merit. Poole has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Poole has not shown any resulting prejudice. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Poole is not entitled to federal habeas relief on ground 2(d).

### F. Ground 2(e)

As ground 2(e), Poole asserts that counsel was ineffective because he failed to investigate and call as witnesses the medical emergency personnel who assisted him. <u>See</u> Petition at 21-22; Memorandum at 11-12. He raised the claim in his Rule 3.850 motion in state court. <u>See</u> Resp. Ex. I at 16-21. The court ultimately

denied the post-conviction motion with respect to the claim, stating in pertinent part:

> In Ground One, Issue E, the Defendant argues that Counsel was ineffective for failing to investigate and call as witnesses the emergency services personnel and medical staff who rendered medical assistance. The Defendant asserts that these witnesses would have refuted the testimony of Trooper Smith. However, Ground One, Issue E, fails.
>
> First, the Defendant argues that Counsel should have called the emergency services personnel to refute Trooper Smith's testimony that he was the driver of the truck, and was found by them "behind the seat . . . behind the wheel of the truck [un]responsive," having suffered no injuries.[26] However, this claim fails. The State entered into evidence a large number of medical records during its case-in-chief. Within those records was the EMS [(emergency medical services)] report. See attached Medical Records.[27] Therefore, this Court was able to review the official reports of the witnesses who the Defendant claims Counsel was ineffective for [not] calling. The Defendant fails to explain what the emergency services personnel would have testified to that was not within their reports. And, significantly, the EMS report notes that the Defendant was the "driver of a full-size pickup." See attached.[28] Therefore, even if the emergency services personnel would have testified that he was found on the ground, and not inside the truck, their report would still identify the Defendant as the driver of the truck. Therefore, this claim is refuted by the record.

---

[26] See Tr. at 40.

[27] See Resp. Ex. J at 134-35.

[28] See Resp. Ex. J at 135.

Second, the Defendant argues that Counsel was ineffective for failing to call Doctor Jennifer Bryan, the attending physician. The Defendant asserts that Dr. Bryan and the staff of Lake City Medical Center "provided medical care, treatment and diagnosis of Defendant's condition and injuries sustained." Motion at 17. The Defendant argues that Dr. Bryan would have refuted Trooper Smith's testimony that he did not sustain any injuries in the crash, and that his condition came from methamphetamine, because she "would have confirmed that contrary to Trooper Smith's testimony that the Defendant had overdosed and suffered not [sic] serious injuries, when in face (sic) he had." Motion at 21. However, this claim also fails. Dr. Bryan's report was also among the medical records that the State submitted into evidence at the VOP hearing. <u>See</u> attached.[29] Therefore, this Court was able to review the report of the witness who the Defendant claims Counsel was ineffective for [not] calling. The Defendant fails to explain what Dr. Bryan would have testified to that was not within her report. And, significantly, Dr. Bryan's report contains the following: that no injuries were seen (page 1)[30]; that the Defendant's urinalysis returned a positive result for the presence of methamphetamine (pages 3 and 5)[31]; no indication that treatment was rendered at Lake City Medical (throughout); that the Defendant was discharged as "good and stable" (page 5)[32]; and that Dr. Bryan's clinical impression was "Acute mental status change. Street drug use. Vehicle-vehicle accident." (page 5).[33] <u>See</u> attached. Therefore, Dr. Bryan's report actually confirms - not refutes - Trooper

---

[29] <u>See</u> Resp. Ex. J at 136-42.

[30] <u>See</u> Resp. Ex. J at 136.

[31] <u>See</u> Resp. Ex. J at 138, 140.

[32] <u>See</u> Resp. Ex. J at 142.

[33] <u>See</u> Resp. Ex. J at 142.

> Smith's testimony that the Defendant did not
> sustain serious injuries in the crash and that
> the primary concern of the staff at Lake City
> Medical Center was the presence of
> methamphetamine in his system. Accordingly,
> the Defendant's claim that Dr. Bryan would
> have refuted Trooper Smith's statements that
> there were no obvious injuries, and that his
> condition was a result of methamphetamine, and
> that he received medical treatment is refuted
> by the record. For these reasons, Ground One,
> Issue E must be denied.

Resp. Ex. J at 61-62 (selected emphasis deleted). On Poole's appeal, the appellate court affirmed the trial court's denial of post-conviction relief per curiam, and later denied Poole's motion for rehearing.

To the extent that the state appellate court affirmed the trial court's denial on the merits,[34] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Poole is not entitled to relief on the basis of the claim.

---

[34] See Wilson, 138 S.Ct. at 1192.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Poole's claim is still without merit. Poole has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Poole has not shown any resulting prejudice. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Poole is not entitled to federal habeas relief on ground 2(e).

## G. Ground 2(f)

As ground 2(f), Poole asserts that counsel was ineffective because he failed to provide the deposition of the semi-truck driver. <u>See</u> Petition at 24-26; Memorandum at 13-14. Respondents argue that the claim is procedurally barred. <u>See</u> Response at 23. Assuming that Poole intends to raise the same ineffectiveness claim here that he raised in his Rule 3.850 motion in state court, <u>see</u> Resp. Ex. I at 21-24, his ineffectiveness claim is sufficiently exhausted. The state court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

> In Ground One, Issue F, the Defendant argues that Counsel was ineffective for failing to review and failing to allow the Defendant to review the deposition of the semi-truck driver who was involved in the crash. The Defendant asserts that one of his former attorneys "was unable to review the sworn deposition of the truck driver" because

39

> the disc on which it was stored "was not
> functioning and was inaudible." Motion at 22.
> However, this claim fails.
>
> This claim fails to demonstrate how
> Counsel could have been ineffective for
> failing to review a deposition (and allow the
> Defendant to review a deposition) that the
> Defendant admits was not reviewable. Further,
> the reason that the Defendant believes the
> semi-truck driver's deposition was important
> is because he alleges the semi-truck driver
> would have testified that he was not inside
> the truck. However, even if this were so, and
> Counsel and the Defendant had reviewed the
> deposition and called the semi-truck driver as
> a witness, this Court still would have heard
> testimony and reviewed the EMS report
> confirming that the paramedics and emergency
> services personnel found the Defendant behind
> the wheel of the truck. Transcript at 40.[35]
> Therefore, this Court concludes that the
> outcome of the VOP hearing would not have been
> different if Counsel and the Defendant had
> reviewed the deposition and even called as a
> witness the semi-truck driver. As the outcome
> of the VOP hearing likely would not have been
> different, this ground fails to meet the
> prejudice prong of the Strickland standard,
> and will be denied. Hurst, 18 So.3d 975.

Resp. Ex. J at 62-63 (selected emphasis deleted). Poole sought

rehearing as to this claim, see id. at 195-96, based on the

discovery of two allegedly exculpatory medical reports, see id. at

199-202. The court denied his motion for rehearing. See id. at 206-

---

[35] Trooper Smith testified that "[b]oth the paramedics and EMS
all stated that Mr. Poole was behind the seat, unresponsive -- or
behind the wheel unresponsive at that time." Tr. at 40; see also
Resp. Ex. J at 136 (stating he "pulled out in front of a semi at
which point it struck [his] left front quarter panel, totaling the
vehicle [and he] walked from the truck and lay down on the
ground").

07. On Poole's appeal, the appellate court affirmed the trial court's denial of post-conviction relief per curiam, <u>see</u> Resp. Ex. M, and later denied Poole's motion for rehearing, <u>see</u> Resp. Exs. N; O.

To the extent that the state appellate court affirmed the trial court's denial on the merits,[36] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Poole is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Poole's claim, nevertheless, is without merit. Poole has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Poole has not shown any resulting prejudice. His ineffectiveness claim is without merit since he has shown neither deficient performance nor

---

[36] <u>See</u> <u>Wilson</u>, 138 S.Ct. at 1192.

resulting prejudice. Accordingly, Poole is not entitled to federal habeas relief on ground 2(f).

## H. Ground 2(g)

As ground 2(g), Poole asserts that counsel was ineffective because he failed to object when the State twice mentioned Polk County charges at the VOP hearing. See Petition at 27-28; Memorandum at 15-17. Respondents argue that the claim is procedurally barred. See Response at 23-24. Assuming that Poole intends to raise the same ineffectiveness claim here that he raised in his Rule 3.850 motion in state court, see Resp. Ex. I at 24-27, his ineffectiveness claim is sufficiently exhausted. The state court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

> In Ground One, Issue G, the Defendant argues that Counsel was ineffective for failing to object to the State's use of facts related to his Polk County charges. The Defendant asserts that since the prosecutor stated at the beginning of the hearing that she would not be seeking to prove the VOP based on those charges,[37] and then she referred to them during the hearing,[38] that Counsel should have objected. However, the Defendant admits that, "While Defense Counsel objected ... The Trial Court overruled the objection." Motion at 26. The Defendant asserts further that Counsel was "patently unprepared to offer argument and objection to the State's averment of facts regarding the

---

[37] See Tr. at 5.

[38] See Tr. at 44.

Polk County allegations." Motion at 26.
However, this claim fails for two reasons.

First, the process of making objections
is a core function of counsel. <u>See</u>, <u>e.g.</u>, <u>Boyd</u>
<u>v. State</u>, 45 So.3d 557, 559 (Fla. 4th DCA
2010) ("Core functions of a defense lawyer in
a criminal case include selecting juries,
introducing and objecting to evidence, cross-
examining witnesses, making motions,
preserving legal issues for appeal, and giving
opening and closing statement."). The
Defendant is not entitled to postconviction
relief simply because, acting as his own
postconviction counsel, he disagrees with the
Court's ruling on Counsel's core functions
(the content, timing or nature of objections)
in hindsight. <u>Hannon v. State</u>, 941 So.2d 1109,
1119 (Fla. 2006) ("Counsel cannot be deemed
ineffective merely because postconviction
counsel disagrees with trial counsel's
strategic decisions. <u>See</u> <u>Strickland</u>, 466 U.S.
at 689, 104 S.Ct. 2052 ("A fair assessment of
attorney performance requires that every
effort be made to eliminate the distorting
effects of hindsight...."); <u>Cherry v. State</u>,
659 So.2d 1069, 1073 (Fla. 1995) ("The
standard is not how present counsel would have
proceeded, in hindsight....").

Second, this Court concludes that this
ground actually raises a trial court error,
couched in the language of an ineffective
assistance of counsel claim. As the Defendant
admits, and the transcript confirms, Counsel
did object to the prosecutor's mention of this
crime, but this Court overruled the objection.
Motion at 26, Transcript at 44, 45.[39] It
seems that the Defendant is actually
unsatisfied with this Court's ruling on the
objection. Transcript at 45. . . .

Resp. Ex. J at 63. The court denied his motion for rehearing. <u>See</u>

<u>id.</u> at 196-97, 206-07. On Poole's appeal, the appellate court

---

[39] <u>See</u> Tr. at 5, 44-45.

43

affirmed the trial court's denial of post-conviction relief per curiam, see Resp. Ex. M, and later denied Poole's motion for rehearing, see Resp. Exs. N; O.

To the extent that the state appellate court affirmed the trial court's denial on the merits,[40] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Poole is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Poole's claim is still without merit. Poole has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Poole has not shown any resulting prejudice. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting

---

[40] See Wilson, 138 S.Ct. at 1192.

prejudice. Accordingly, Poole is not entitled to federal habeas relief on ground 2(g).

## I. Ground 2(h)

As ground 2(h), Poole asserts that counsel was ineffective because he failed to investigate, take photographs of the evidence, and call the tow truck driver and the owner of the wrecking yard as witnesses at the VOP hearing. <u>See</u> Petition at 30-31; Memorandum at 17-19. He raised the claim in his Rule 3.850 motion in state court. <u>See</u> Resp. Ex. I at 27-29. The court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

> In Ground One, Issue H, the Defendant argues that Counsel was ineffective for failing to investigate, take photographs of the evidence, and call the tow truck driver and owner of the wrecking yard as witnesses at the hearing. The Defendant asserts that this additional evidence could have refuted the testimony of Trooper Smith's contention that there was so much trash in the truck that there wasn't enough room for two people to be in the truck.

> A review of the record reveals that this claim cannot meet the prejudice prong of the <u>Strickland</u> standard. The Defendant apparently believes it is significant there was not [sic] excessive trash in the stolen truck because that fact leads to the conclusion that there was only enough room for one person in the truck. However, the record reveals there was plenty of evidence other than the excessive trash in the truck that reflected there was only one occupant of the truck, and that the occupant was the Defendant.

First, the driver of the semi-truck which collided with the stolen truck informed Trooper Smith that there was only one occupant of the truck. Transcript at 23. Second, Trooper Smith's search of the truck produced the Defendant's Prison Release documents that reflected the Defendant's entrance into and release from the Department of Corrections. Transcript at 24. Third, the Polk County Sheriff's Office possessed video footage of the Defendant stealing the truck on April 24. Transcript at 26, 27. Therefore, there was ample evidence, other than Trooper Smith's contention that the truck contained excessive trash, that demonstrated there was only one occupant of the truck, and that the occupant was the Defendant. Therefore, this Court's finding that the Defendant violated probation likely would not have been different if the tow truck driver, owner of the wrecking yard, or additional photos had produced evidence that there was not excessive trash in the truck. As the outcome of the VOP hearing likely would not have been different, this ground fails to meet the prejudice prong of the <u>Strickland</u> standard.

Additionally, Counsel actually cross-examined Trooper Smith on this very issue. Counsel asked Trooper Smith where his information about the Defendant's identity came from, whether there had been enough time after the crash for a second occupant to leave the scene, and whether the trash and items in the truck could have shifted on the impact of the crash. Transcript at 31-33. Counsel also argued during closing argument that Trooper Smith could not "say for certain whether someone else was in that vehicle." Transcript at 46. Therefore, this Court concludes that Counsel provided effective representation on this issue. While he may not have accomplished it in the manner that the Defendant now alleges (with the benefit of hindsight), this does not demonstrate deficient performance under the <u>Strickland</u> standard, as it was a core function of Counsel, and as this Court cannot use hindsight to evaluate the

> performance of Counsel. <u>Boyd</u>, 45 So.3d 557;
> <u>Strickland</u>, <u>supra</u>. As Ground One, Issue H
> fails to meet either prong of the <u>Strickland</u>
> standard, it must be denied.

Resp. Ex. J at 64-65 (selected emphasis deleted). On Poole's appeal, the appellate court affirmed the trial court's denial of post-conviction relief per curiam, and later denied Poole's motion for rehearing.

To the extent that the state appellate court affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Poole is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Poole's claim, nevertheless, is without merit. Poole has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Poole has not shown any resulting prejudice. His ineffectiveness claim is

without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Poole is not entitled to federal habeas relief on ground 2(h).

## J. Ground Three

As ground three, Poole asserts that the cumulative effect of counsel's ineffectiveness deprived him of a fair and impartial VOP hearing. <u>See</u> Petition at 36-37; Memorandum at 22-23. He raised the claim in his Rule 3.850 motion in state court. <u>See</u> Resp. Ex. I at 32-34. The court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

> In Ground Three, the Defendant argues that relief is warranted based on Counsel's cumulative errors. However, "[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail." <u>Dufour v.State</u>, 905 So.2d 42, 70 (Fla. 2005) (citing <u>Griffin v. State</u>, 866 So.2d 1, 22 (Fla. 2003)[)]. Here, each of the individual claims of error is without merit. Therefore, Ground Three's claim of cumulative error must fail, and must be denied.

Resp. Ex. J at 65 (selected emphasis deleted). On Poole's appeal, the appellate court affirmed the trial court's denial of post-conviction relief per curiam, and later denied Poole's motion for rehearing.

To the extent that the state appellate court affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record

48

and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Poole is not entitled to relief on the basis of the claim.

Nevertheless, in the event the state appellate court's adjudication of the claim is not entitled to deference, Poole's claim is still without merit. The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). As previously discussed, none of Poole's individual claims of error or prejudice have any merit, and therefore there is "nothing to accumulate." Id.; see United States v. Mosquera, 886 F.3d 1032, 1052 (11th Cir. 2018). Thus, Poole is not entitled to federal habeas relief on ground three.

## VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Poole seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability

only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Poole "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Poole appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of August, 2018.

MARCIA MORALES HOWARD
United States District Judge

sc 8/2
c:
Dwaine Poole, FDOC #757638
Counsel of Record